UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

VIVIAN M.,[1]                          )
                                       )
                Plaintiff,             )
                                       )
        v.                             )        No. 1:21-cv-00686-DML-JRS
                                       )
KILOLO KIJAKAZI, Acting Commissioner   )
of Social Security,[2]                 )
                                       )
                Defendant.             )

## Order on Complaint for Judicial Review

Vivian M. filed for supplemental security income ("SSI") from the Social

Security Administration ("SSA") on September 21, 2018, alleging an onset date of

September 21, 2018.  [Tr. 15.]  Her application was initially denied on January 17,

2019 [Tr. 105], and upon reconsideration on April 30, 2019 [Tr. 117].

Administrative Law Judge Livia Morales (the "ALJ") conducted a hearing on July

21, 2020.  [Tr. 34–75.]  On August 24, 2020, the ALJ issued a decision that

concluded that Vivian was not disabled.  [Tr. 12–27.]  The Appeals Council denied

review on January 22, 2021.  [Tr. 1.]  On March 22, 2020, Vivian timely filed this

---

[1] To protect the privacy interests of claimants for Social Security benefits, and
consistent with the recommendation of the Court Administration and Case
Management Committee of the Administrative Office of the United States Courts,
the Southern District of Indiana uses only first names and last initials of non-
governmental parties in Social Security judicial review opinions.

[2] According to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi automatically
became the Defendant in this case when she was named as the Acting
Commissioner of the SSA.

1

civil action asking the court to review the denial of benefits according to 42 U.S.C. §§ 405(g) and 1383(c).  [Filing No. 1.]

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Vivian is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy.  *Id.* at 1382c(a)(3)(B).  The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability.  20 C.F.R. § 416.920.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled.  Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  *Id.* at 416.920(c).  The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  The Listing of

Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity ("RFC") is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 416.945. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled. The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 416.960(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).[3]

---

[3] The Code of Federal Regulations contains separate, parallel sections concerning disability insurance benefits and SSI, which are identical in most respects. Cases like *Young* may reference the section pertaining to only one type of benefits. 362 F.3d at 1000 (citing 20 C.F.R. § 404.1520 (for disability insurance benefits)). Generally, a verbatim section exists establishing the same legal point with both

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential.  A court must affirm if no error of law occurred and if the findings are supported by substantial evidence.  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  Substantial evidence means evidence that a reasonable person might accept as adequate to support a conclusion.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation and citation omitted).  The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence.  *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability.  *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).  The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions.  *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Before addressing Vivian's assertions of error, the court provides background information about her past work and the ALJ's sequential findings.

---

types of benefits.  *See, e.g.*, 20 C.F.R. § 416.920 (for SSI).  The court will take care to detail any applicable substantive differences but will not usually reference the parallel section.

## Background and ALJ Decision

Vivian was 50 years old when her alleged disability began.  [Tr. 25.]  She had

graduated from high school.  [Tr. 42.]  She had a history of special education.  [Tr.

50.]  She had worked as a cook, laborer, ticket taker, and janitor.  [Tr. 44; 188.][4]

The ALJ followed the five-step sequential evaluation set forth by the SSA in

20 C.F.R. § 416.920(a)(4) and concluded that Vivian was not disabled.  [Tr. 27.]

Specifically, the ALJ found as follows:

- At step one, Vivian had not engaged in substantial gainful activity[5] since September 21, 2018, the application date.  [Tr. 17.]

- At step two, she had "the following severe impairments: right foot pes planus and calcaneal spur status post debridement of callus plantar aspect, onychomycosis of the bilateral toes, osteoarthritis, peroneal tendonitis of the right ankle, asthma, depressive disorder, adjustment disorder, posttraumatic stress disorder ("PTSD"), and narcissistic personality disorder."  *Id.* (citation omitted).

- At step three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  [Tr. 19.]

- After Step Three but before Step Four, Vivian had the RFC "to perform light work as defined in 20 CFR 416.967(b) except she can stand and walk no more than four hours in an eight-hour workday; can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can frequently balance and stoop; can occasionally kneel, crouch, and crawl; can occasionally work at unprotected heights but

---

[4] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here.  Specific facts relevant to the court's disposition of this case are discussed below.

[5] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 416.972(a).

can frequently work around moving mechanical parts and can frequently operate a motor vehicle in the course of employment; can tolerate occasional exposure to dust, odors, fumes, and other pulmonary irritants; can occasionally tolerate temperature extremes, humidity, and wetness; and she will predictably be off-task up to 10% of the workday due to the combined distracting effects of her mental impairments and her pain." [Tr. 20.]

- At step four, considering the testimony of the vocational expert ("VE") and Vivian's RFC, she was incapable of performing her past relevant work as a housekeeper. [Tr. 25.]

- At step five, considering the VE's testimony and Vivian's age, education, work experience, and RFC, she was capable of performing other work with jobs existing in significant numbers in the national economy in representative occupations like a weight measure checker clerk, hand sorter, and bus monitor. [Tr. 25–27.]

## Analysis

Vivian contends that the ALJ erred: (A) in evaluating her mental impairments by failing to develop the record and leaving the RFC without the support of substantial evidence, and (B) by not providing for the need to use a cane and rolling walker in her RFC finding. The court will address the arguments in turn.

### A.  The ALJ did not err in evaluating Vivian's mental impairments.

Vivian contends that the ALJ erred in evaluating her mental impairments by: (1) failing to develop the record by obtaining an opinion from a treating source or scheduling a consultative examination, (2) ignoring evidence that Vivian had marked or extreme limitations interacting with others, and (3) failing to provide a logical bridge from the evidence to the ALJ's conclusion that Vivian's RFC did not include limitations in interacting with others.

1. <u>The ALJ did not fail to develop the record.</u>

Vivian was represented by counsel at the hearing.  [Tr. 32.]  A claimant represented by counsel is presumed to have made her best case to the ALJ.  *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007).  When Vivian filled out forms for the SSA describing her functioning, she indicated that her conditions affected lifting, squatting, bending, standing, reaching, walking, kneeling, and climbing stairs.  [Tr. 199.]  She did not identify memory, completing tasks, concentration, understanding, following instructions, or getting along with others as functional problems.  *Id*. When Vivian was asked by the ALJ at the hearing why she was unable to work, she testified that she had bad arthritis in her knees and shoulders, some days were better than others, and she could not exert herself, move around too much, and stand for too long.  [Tr. 48–49.]  When her counsel took over questioning, he asked her about problems with her right foot and needing to urinate more frequently in the morning after taking a water pill.  [Tr. 54–56.]  At no point did Vivian allege that her mental impairments contributed to her disability.

"Particularly in counseled cases, the burden is on the claimant to introduce some objective evidence that further development of the record is required."  *Poyck v. Astrue*, 414 F. App'x 859, 861 (7th Cir. 2011).  "If the ALJ denied the request for an examination, on appeal the claimant must show prejudice by pointing to specific medical evidence that was omitted from the record."  *Id*. at 861–62.  Vivian did not request that the ALJ develop the record further concerning her mental impairments, nor did she request that the ALJ order a consultative examination.

Even if she had, "[t]he ALJ is not *required* to order such examinations, but may do so if an applicant's medical evidence about a claimed impairment is insufficient." *Skinner*, 478 F.3d at 844 (emphasis in original) (citing 20 C.F.R. §§ 416.912(f) and 416.917). By regulation, "[t]he evidence in [the] case record must be complete and detailed enough to allow [the SSA] to make a determination or decision about whether the claimant is disabled," including evidence that would allow the SSA to determine the "nature and severity" of the claimant's impairments and her RFC "to do work-related physical and mental activities." 20 C.F.R. § 416.912(a)(2). The SSA has the responsibility to develop the complete medical record and "to make every reasonable effort to help [the claimant] get medical evidence from [her] own medical sources . . . ." *Id*. at 416.912(b)(1). "Generally, [the SSA] will not request a consultative examination until [the SSA has] made every reasonable effort to obtain evidence from [the claimant's] medical sources." *Id*. at 416.912(b)(2). "If [the SSA] cannot get the information [the SSA] need[s] from [a claimant's] medical sources, [the SSA] may decide to purchase a consultative examination." 20 C.F.R. § 416.919a(a). The SSA "may purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision," including when there is "needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis . . . ." *Id*. at 416.919a(b).

On appeal, Vivian asserts that "[d]espite evidence from [her] treating psychiatrist that [she] was diagnosed with Narcissistic Personality Disorder and

Paranoid Personality Disorder and was prescribed the powerful anti-psychotic drug Geodon, the ALJ made no attempt to develop the file by obtaining an opinion from the treating source or scheduling a consultative examination." [Filing No. 19 at 15.] Vivian alludes to a record that contained ample evidence of her mental functioning, including her diagnoses, reported symptoms, and clinical findings from mental status examinations. That evidence was sufficient for the ALJ to evaluate Vivian's mental impairments, but she faults the ALJ for not procuring a medical opinion.

The regulations do not expressly require the ALJ to develop the record by seeking a medical opinion. For claims like Vivian's filed on or after March 27, 2017, "[a] medical opinion is a statement from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [she had] one or more impairment-related limitations or restrictions in the abilities listed . . . ." 20 C.F.R. § 416.913(a)(2). The list includes a claimant's abilities to "perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting . . . ." *Id.* at 416.913(a)(2)(i)(B). Even though the ALJ did not expressly rely on the prior administrative medical findings of the state agency psychological consultants, the consultants reviewed the evidence at the initial and reconsideration phase and assessed that Vivian's mental impairments were not severe.[6] [Tr. 81–82; 93–94.]

---

[6] "An impairment or combination of impairments is not severe if it does not significantly limit [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.922(a). "[B]asic work activities" are "the abilities and aptitudes

The ALJ did find that Vivian had severe mental impairments including depressive disorder and narcissistic personality disorder.  The ALJ also explained that because of "the distracting effects of [Vivian's] depressed and irritable moods, paranoid thoughts, and her pain . . ., she [would have] predictably be[en] off-task for up to 10% of the workday in addition to regularly scheduled breaks."  [Tr. 24.]

Vivian faults the ALJ for assessing her RFC without a medical opinion specifying her limitations from her mental impairments, but according to the regulations, "[i]f [the] case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing [the claimant's] residual functional capacity."  20 C.F.R. § 416.946(c).  The ALJ was not required to rely on a medical opinion to assess Vivian's RFC.

Citing *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000), and *Selby v. Barnhart*, 48 F. App'x 576, 581 (7th Cir. 2002), Vivian asserts that the ALJ's duty to develop the record "can require obtaining opinion evidence."  [Filing No. 19 at 15.]  In *Smith*, the ALJ discounted functional limitations assessed by the claimant's treating physician because the doctor had not ordered x-rays to confirm the claimant's arthritis.  231 F.3d at 437.  But the court explained that there was imaging in the record that was nearly ten years old showing that the claimant had early signs of degeneration in his ankle that would have presumably only

---

necessary to do most jobs."  *Id.* at 416.922(b).  "Examples of these include . . . (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting."  *Id.*

progressed, and the court did not see how the ALJ could evaluate the claimant's arthritis without ordering updated imaging. *Id*. at 437–38. In the unpublished *Selby* opinion, the court relied on an older regulatory scheme—not applicable to Vivian's claim—that expressly directed the ALJ to give more weight to examining sources, especially treating sources. 48 F. App'x at 580 (citing 20 C.F.R. § 404.1527(d) (for claims filed before March 27, 2017, sometimes referred to as the treating physician rule)). The court explained that rather than discounting the opinion of the claimant's treating physician that he was disabled because the opinion was overly broad, the ALJ should have done a better job of seeking clarification from the treating physician about the claimant's specific limitations.[7] *Selby*, 48 F. App'x at 580–81 (citing *Smith*, 231 F.3d at 437 for the proposition that the "ALJ should gather additional medical evidence if he believes that the evidence of record is insufficient to enable him to make a disability determination"). Here, neither the ALJ nor the reviewing psychological consultants found the record insufficient to evaluate Vivian's mental impairments. Vivian did not allege that her mental impairments were disabling, nor did she produce a medical opinion that she

---

[7] Vivian relies on case law that was applying regulations that do not apply to her claim. For instance, the treating source statement in *Selby* would no longer qualify as a medical opinion because the physician did not assess specific impairment-related limitations or restrictions. 20 C.F.R. § 416.913(a)(2). Also, in *McFadden v. Berryhill*, 721 F. App'x 501, 506 (7th Cir. 2018), the court explained that an ALJ need not solicit further explanation from a treating source every time she evaluates an opinion. The court observed that *Barnett*—that had found the duty to solicit additional information—was applying a regulation, 20 C.F.R. § 404.1527(c)(3), that had been eliminated in 2012. *Id*. (citing *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004); 77 Fed. Reg. 10651, at 10656 (Feb. 23, 2012)).

was disabled because of her mental impairments.  And Vivian has not explained why the ALJ had the duty rather than her counsel to seek a medical opinion from one of her treating sources.  As in *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010), Vivian, "acting through counsel," knew that the consultants did not find her mental impairments disabling, and even though she was gathering other evidence, she never presented a treating opinion, nor did she request that the ALJ contact a consultant for further development.  "The appropriate inference is that [she] decided that another expert opinion would not help her."  *Id*.  Accordingly, the ALJ cannot be faulted for failing to develop the record.

### 2. Vivian has not demonstrated that the ALJ ignored significant evidence.

When assessing the "paragraph B" criteria, the ALJ found that the Vivian had a mild limitation in interacting with others.  [Tr. 19.]  The limitations identified in the paragraph B criteria are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process.  20 C.F.R. § 416.920a(d)–(e).  However, the RFC assessment used at steps four and five requires a more detailed assessment by itemizing various functions contained in the broad areas of functioning found in paragraph B.  Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996), 1996 WL 374184, at *4.  The ALJ explained her paragraph B finding that Vivian had a mild limitation interacting with others:

> As detailed below, although the claimant's treaters sometimes described her as irritable, they also regularly stated that she

> behaved in a cooperative manner.  She admitted that she was able to maintain a relationship with her husband, with whom she lived, and that she attended church services regularly and socialized with her family.  She also said that she was able to take public transportation and go shopping in public stores.

[Tr. 19 (citations omitted).]

Vivian contends that the ALJ ignored evidence that she had marked or extreme limitations interacting with others.  An extreme limitation in one of the broad paragraph B domains would mean that Vivian was presumptively disabled at step three.  *See, e.g.*, 20 C.F.R. § Pt. 404, Subpt. P., App. 1, 12.04(b) (for depressive disorders).  Alternatively, marked limitations in two of the domains would also establish disability.  *Id*.  However, Vivian did not produce any medical opinion that she had marked or extreme limitations interacting with others.  She does not argue that she has marked limitations in any other domain.  And she does not cite any legal authority or even the regulatory definition of an extreme limitation to advance a step three argument.  The Seventh Circuit has held in a social security disability context that "[p]erfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) (quoting *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016)).  Any step three argument is waived.

Regarding Vivian's argument that the ALJ ignored evidence, the Seventh Circuit has explained that "an ALJ doesn't need to address every piece of evidence, but . . . she can't ignore a line of evidence supporting a finding of disability." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021).  Vivian contends that her

13

mental health records demonstrate that anger was her primary emotion, that her interpersonal disposition was a barrier to her success, that she was distrustful and paranoid throughout the treatment record, that she was diagnosed with a paranoid personality disorder, and that she had difficulty getting along with her family, case workers, and her own therapists "who are trained to deal with mentally ill individuals." [Filing No. 19 at 16–18.]

The ALJ addressed this line of evidence. She explained that Vivian treated with a therapist and psychiatrist for depressed and irritable moods, paranoid thoughts, and questionable judgment. [Tr. 23.] She also explained that even though Vivian continued to report some irritability and paranoid thoughts, she also showed some improvement with her mood beginning in May 2019, that she was observed by various examiners throughout the record to be cooperative and pleasant, and that her treating providers also regularly recorded normal or unremarkable moods and behaviors. *Id.*

The ALJ summarized fairly the conflicting evidence of Vivian's interpersonal demeanor, which is outlined below. On November 6, 2018, Vivian's therapist questioned her about "always feeling like she had to fight the world . . . ." [Tr. 1128.] On examination, her affect was irritable, and her therapist noted that it was difficult to interject questions. *Id.* Vivian's therapist assessed delusional thinking with continued paranoid themes that she appeared to view the world with distrust and felt the need always to protect herself. *Id.* On November 8, 2018, her psychiatrist's mental status examination recorded that Vivian's attitude was

14

irritable, her mood depressed, her thought content paranoid, and her judgment questionable, but that her attitude was cooperative, she made good eye contact, her speech was normal with good articulation, and her thought processes were logical, sequential, and goal oriented.  [Tr. 1130.]  Vivian's diagnoses included paranoid personality disorder and narcissistic personality disorder.  [Tr. 1131.]  Her psychiatrist explained that she was "neither gravely disabled at present nor acutely dangerous to self/others.  [But] Inappropriate/excessive anger/reactivity to perceived slights/poor coping arising from [her personality disorders] appear[ed] to be a major barrier to success."[8]  *Id*.

On May 24, 2019, Vivian's therapist explained that "social connectedness" was one of Vivian's strengths and that she had "significant interpersonal skills." [Tr. 1319.]  She reported socializing with family members, playing cards, going to church, and working for a temporary service at the stadium.  *Id*.  Her mental status examination recorded that her mood was euthymic, she showed a full range of emotions including a "brighter" affect with "[l]ess posturing," but she had only partial insight and her judgment was noted to be "questionable at times."  [Tr. 1321.]  Her therapist explained that she was still "distrustful," but Vivian reported feeling like she had made improvement.  [Tr. 1322.]

---

[8] Vivian includes her psychiatrist's statement, for example, in the evidence that she contends the ALJ ignored.  [Filing No. 19 at 17.]  But Vivian does not contend that her psychiatrist's opinion was a medical opinion.  The ALJ cited to the treatment visit and summarized it as showing that Vivian's psychiatrist "regularly observed depressed and irritable moods and paranoid thoughts . . . ."  [Tr. 23.]

On January 23, 2020, Vivian was noted to be cooperative, pleasant, and she related well. [Tr. 1422.] On February 26, 2020, she was cooperative and conversant. [Tr. 1425.] On February 27, 2020, Vivian was cooperative and conversant on examination, but she reported problems with a Department of Child Services case worker who was involved with her son because of an incident between him and his father, and her therapist recorded "[c]ontinued irritability and paranoia." [Tr. 1429–30.] An examination by her psychiatrist that same day recorded her to be both cooperative and irritable. [Tr. 1432.] On April 13, 2020, Vivian was cooperative and conversant as she discussed having Easter with her mother and a "very small group of people there." [Tr. 1452–53.] On April 17, 2020, her attitude was cooperative, and her mood was depressed and anxious but not irritable. [Tr. 1462.] Her psychiatrist explained that she suffered from multiple psychiatric conditions but was neither "gravely disabled," "nor acutely dangerous" to herself or others, and her global status was "improving but with [a] persisting unstable condition." [Tr. 1464.] On May 11, 2020, Vivian reported relationship problems with her children. [Tr. 1467.] She was angry and irritable but cooperative and conversant during examination. [Tr. 1468.]

Vivian asserts only on appeal that her inability to interact with others was disabling. She cites SSR 85-15 (S.S.A. 1985), 1985 WL 56857, at *4, that "[t]he basic mental demands of competitive . . . unskilled work include the abilities (on a sustained basis) . . . to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." "A substantial

loss of ability to meet any of these basic work-related activities . . . would justify a finding of disability . . . ." *Id*. When reporting her functioning to the SSA, Vivian did not indicate that getting along with others was a problem. There is no medical opinion that clearly states that she had a substantial loss of one of these basic abilities. And Vivian has not made any argument that the ALJ was unqualified to evaluate her mental treatment records or that any new and significant evidence was added to the record after the consultant's last review. Accordingly, the court has not considered those potential arguments and finds that Vivian has waived them. What remains is beyond the scope of review: only an invitation for the court to reweigh the relevant evidence that the ALJ considered. Accordingly, Vivian has not demonstrated that the ALJ erred by ignoring significant evidence.

### 3. The ALJ's relevant RFC finding is supported by substantial evidence.

Relatedly, Vivian contends that the ALJ summarized the evidence of her mental functioning but did not explain the reasoning behind her RFC finding. [Filing No. 19 at 18.] She also contends that the ALJ relied on "innocuous things" like her ability to live with her husband to find that she had only a mild limitation interacting with others. *Id*. She further contends that the ALJ did not account for her paragraph B finding that Vivian had a mild limitation interacting with others by limiting her ability to interact with the public, coworkers, or supervisors in her RFC. *Id*. at 19.

As previously discussed, the ALJ did not rely solely on Vivian's relationship with her husband to assess her interpersonal functioning. She considered Vivian's

daily activities like her ability to use public transportation, shop in public stores, and attend church. For instance, Vivian testified that she got help from her sisters to get around and she also used public transportation, *i.e.*, buses. [Tr. 41–42.] The ALJ also relied on mental status examinations showing that Vivian was cooperative, at least for the most part, with her treating providers.

Furthermore, the ALJ did not ignore Vivian's ongoing problems with irritability and paranoia. The ALJ explained that Vivian would be expected to be off task because of distractions including distractions from the effects of her interpersonal demeanor. The ALJ's RFC "finding was more limiting than that of any state agency doctor or psychologist, illustrating reasoned consideration given to the evidence [Vivian] presented." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Minor limitations—such as an inability to work overtime because of fatigue and a limited ability to follow moderately complex instructions—do not need to be included in the RFC when they would have no effect on the outcome of the case. *See Denton v. Astrue*, 596 F.3d 419, 423–25 (7th Cir. 2010). Similarly, an appellant must establish harm by identifying specific limitations that were supported by the evidence and neglected by the ALJ. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). Vivian does not identify the specific interaction limitations that she contends should have been included in her RFC. And her counsel did not solicit testimony from the VE about the effects of interaction limitations on the occupational base. Accordingly, the ALJ's RFC finding concerning Vivian's limitations from her mental impairments is supported by

substantial evidence, the ALJ adequately explained her reasoning, and Vivian has
not demonstrated harm.

### B. The ALJ's RFC finding that omitted the use of an assistive device is supported by substantial evidence.

Vivian contends that the ALJ did not give sound reasoning for finding that
Vivian's RFC did not include the need to use an assistive device.  [Filing No. 19 at
19–20.]  She also contends that the ALJ played doctor by concluding without
medical support that Vivian did not need to use the assistive devices prescribed by
her treating providers.  *Id.* at 20–21.

SSR 96-9p (S.S.A. July 2, 1996), 1996 WL 374185, at *7, explains that an
"adjudicator must always consider the particular facts of a case" concerning the use
of hand-held assistive devices.  The ruling explains:

> To find that a hand-held assistive device is medically required, there
> must be medical documentation establishing the need for a hand-held
> assistive device to aid in walking or standing, and describing the
> circumstances for which it is needed (i.e., whether all the time,
> periodically, or only in certain situations; distance and terrain; and
> any other relevant information).

*Id.*  Depending on the circumstances, the SSA's guidance suggests that consultation
with a vocational resource "may be especially useful" to consider the effect of the use
of an assistive device on the occupational base.  *Id.*

The ALJ addressed Vivian's alleged need to use an assistive device:

> She described pain and weakness so severe that she needed to make
> daily use of a [rollator] walker or a cane to ambulate; however,
> although the record does confirm that she was prescribed these
> assistive devices, at no point did any of her medical providers actually
> observe her using an assistive device to walk.  She admitted to her
> physical therapist that she "does not consistently use cane when out in

> community," where her need for such a device would presumably be greatest. Moreover, although her medical providers did observe tenderness in the ankles and other major joints, they otherwise regularly observed that she presented for examinations in no acute distress, with only intermittent reports of weakness and with no mention of any unusual fatigue. Imaging testing has consistently shown only "mild" levels of degeneration or "small" abnormalities.

[Tr. 23–24.] In *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012), the court explained that even abundant evidence of the claimant's use of an assistive device— including her presentation with one during treatment visits—did not necessarily establish that an assistive device was medically required according to SSR 96-9p. On June 6, 2019, Vivian reported to her primary care physician that her knee pain was "well controlled" with Voltaren gel and she was planning on returning to work part time. [Tr. 1324.] She had seen an orthopedist who offered her steroid injections, but she refused because of discomfort with needles and her preference for conservative management. *Id.* Her physician diagnosed primary osteoarthritis of both knees and explained, "Pain controlled on current regimen however, in attempting to return to work, patient is concerned about fall risk and inability to walk/stand for extended periods and needing to frequently sit down and rest." [Tr. 1330.] Vivian's physician recorded that a rollator walker was "ordered . . . to reduce fall risk and maintain mobility." *Id.* On June 19, 2019, Vivian attended physical therapy for knee pain. [Tr. 1333.] She denied recent falls. *Id.* She reported that she ambulated with a cane in her home environment but did not consistently use a cane when out in the community. *Id.* She reported that "cream and pills are good." *Id.* On examination, Vivian ambulated without an assistive device and had

"[d]ecreased knee extension through gait cycle with slight weight shift onto [left lower extremity]."  [Tr. 1335.]  She had some decreased strength, "4+/5," in various leg muscles that were tested.  [Tr. 1335–36.]  On June 23, 2020, her physician ordered a replacement rollator walker because her previous one had been stolen.  [Tr. 1527.]

Vivian takes issue with the ALJ's reasoning.  She suggests that the fact that the medical source did not record her use of an assistive device "is not proof that they did not observe her use of it.  To the contrary, if a medical source has prescribed a cane for walking and the patient is not using it they would note noncompliance."  [Filing No. 19 at 21.]  The fact that no treating source has documented a claimant's use of an assistive device would certainly be a reasonable basis to conclude that one was not consistently used.  Regardless, Vivian simply ignores the more direct evidence that the ALJ relied on.  She reported to her physical therapist that she did not consistently use an assistive device when outside the home.  As the ALJ explained, if Vivian needed an assistive device for prolonged standing and ambulation—as she explained to her treating physician who prescribed the rollator walker—she presumably would have had a greater need to use an assistive device when she was out in the community.  The ALJ provided a reasonable explanation in support of her finding that an assistive device was not medically required.

The ALJ did not play doctor in reaching that conclusion.  In *Tripp*, the court explained that even a physician's letter that "asserted matter-of-factly" that the

claimant "does need a crutch" lacked "the specificity necessary to determine whether this was the doctor's *medical* opinion or merely a restatement of what was told to him by [the claimant]." 489 F. App'x at 955 (emphasis in original). An assistive device is not a controlled substance that requires a prescription. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (a cane does not require a prescription). A prescription may assist the recipient with getting the cost covered by insurance. The fact that Vivian was prescribed assistive devices by her medical providers does not establish that her medical sources determined that she would need to use one in the workplace. The prescriptions also do not establish the specific circumstances that an assistive device might be medically required according to SSR 96-9p. The ALJ did not need to seek medical input because Vivian was prescribed assistive devices, particularly when the record provided substantial evidence that examinations and her own reports did not establish that an assistive device was medically required.

Moreover, the record does not establish that the ALJ's relevant finding was material. The ALJ assessed that Vivian could perform a reduced range of light exertional work that limited her to standing and walking no more than four hours in an eight-hour workday. Some light exertional occupations are performed primarily sitting but require pushing and pulling of arm or leg controls that exceed the exertional demands of sedentary work. SSR 83-10 (S.S.A. 1983), 1983 WL 31251, at *5. Regarding the representative light occupations that the ALJ ultimately found Vivian could perform, the ALJ asked the VE about the effect of an

22

individual needing to use a rollator walker to sit down during breaks.  [Tr. 64.]  The VE testified that the individual could still perform the work.  *Id*.  The ALJ asked if the individual could perform the jobs if the individual needed a cane for walking, and the VE testified, "At the light level, yes, your honor.  I believe these jobs are mostly sitting jobs."  *Id*.  Vivian's counsel cross-examined the VE about the effect of an individual always being unable to use one hand while needing to hold a cane.

[Tr. 72.]  The VE responded:

> The jobs that I've enumerated are basically sit-down jobs.  I don't think she'd be using a cane during the period of time that she's sitting down. I think she could perform the work.  Most of these jobs require up to six hours of sitting and two hours of standing.  The standing portion, using the cane, I don't think would interfere with her ability to be able to function.

*Id*.  Vivian's counsel did not develop the record further by soliciting testimony from the VE about limitations concerning the use of an assistive device that would preclude performance of the representative occupations.  On appeal, Vivian ignores the VE's testimony that the representative occupations could be performed by an individual who needed to use a cane.  Agency descriptions of how work is "ordinarily" performed at certain exertional levels does not refute expert testimony in response to a specific question.  *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000).  Regardless, Vivian has waived any argument challenging the VE's testimony.  Accordingly, Vivian has not demonstrated that she was prejudiced by the ALJ's relevant RFC finding.

## Conclusion

For the reasons detailed in this order, the court finds no legal basis to reverse the ALJ's decision that Vivian was not disabled during the relevant time.

Therefore, the decision below is **AFFIRMED.**  Final Judgment will issue accordingly.

Date: 9/16/2022

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

Brian J. Alesia
SOCIAL SECURITY ADMINISTRATION
brian.alesia@ssa.gov

Erin Leigh Brechtelsbauer
SOCIAL SECURITY ADMINISTRATION
erin.brechtelsbauer@ssa.gov

Edward A. Wicklund
OLINSKY LAW GROUP
twicklund@windisability.com

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov